UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-cr-40085-JPG-3 |
| DEDRICK R. BELL, | |
| Defendant. | |

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant Dedrick R. Bell's third *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 1058). The Government has responded (Doc. 1076), and the defendant has replied to that response (Doc. 1102). After the Government responded, Bell attempted to file a supplement (Doc. 1077), but the Court declined to allow him to do so, so the issues raised in that filing are not considered in this order. Should the concerns Bell raised in his proposed supplement continue, the Court encourages him to exhaust his administrative remedies by asking the warden of his institution to move on his behalf for compassionate release, and then to file another motion for compassionate release—it would be his fourth—after the appropriate exhaustion time has passed.

**I.   Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise, the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the

2

community.  U.S.S.G. § 1B1.13(a)(2) (2023).[2]  The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.**—
>> **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> **(B)** The defendant is—
>>> **(i)** suffering from a serious physical or medical condition,
>>> **(ii)** suffering from a serious functional or cognitive impairment, or
>>> **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>> **(D)** The defendant presents the following circumstances—
>>> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>>> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>>> **(iii)** such risk cannot be adequately mitigated in a timely manner.
>
> * * *
>
> **(3) Family Circumstances of the Defendant.**—
>> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>> **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>> **(D)** The defendant establishes that circumstances similar to those listed in paragraphs

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

>   (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.
>
>   * * *
>
>   **(5) Other Reasons.**—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
>   **(6) Unusually Long Sentence.**—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b) (2023).

The guideline further states that non-retroactive changes in the law may not be considered in determining whether an extraordinary and compelling reason exists, but they may be considered in determining the extent of a reduction where other extraordinary and compelling reasons exist. U.S.S.G. § 1B1.13(c) (2023).  The guideline also provides that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court should grant a reduction. U.S.S.G. § 1B1.13(d) (2023).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and

---

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13 (2023).

## II. Analysis

In December 2020, Bell pleaded guilty to one count of conspiracy to distribute 50 grams or more of actual methamphetamine (Count 1) and two counts of possession with intent to distribute 50 grams or more of actual methamphetamine (Counts 3, 4). At sentencing, the Court found Bell's relevant conduct to be more than 127,000 kilograms of converted drug weight comprising actual methamphetamine and cocaine. The Court found his base offense level was 38, increased that level by 2 points under U.S.S.G. § 2D1.1(b)(1)[4] because he possessed six firearms near methamphetamine, and decreased that level by 3 points under U.S.S.G. § 3E1.1(a) for timely acceptance of responsibility, for a total offense level of 37. The Court found Bell fell within criminal history category II, so his guideline sentencing range was 235 to 293 months in prison. In May 2021, the Court sentenced Bell to 235 months on all counts, to run concurrently. Bell's projected release date is September 13, 2028. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 12, 2025).

Bell now asks the Court to release him or place him in home confinement on the grounds that he suffers from a number of health conditions including Type II diabetes, diabetic neuropathy,

---

[4] Unless otherwise noted, the references to the guidelines in this order are to the 2018 United States Sentencing Guidelines Manual.

hypertension, high cholesterol, sleep apnea requiring use of a CPAP machine, osteoarthritis in his foot (hammer toe), a heel spur, and obesity. He claims these conditions put him at an untenably high risk of serious complications from COVID-19, flu, and RSV and side-effects of the COVID-19 vaccine. He claims that BOP medical staff is not providing him adequate medical care like he could get for himself if he were on home confinement. He cites generally to authorities making statements about the inadequacy of medical care in federal prisons.

Bell also believes he is the only available person to care for his parents, both of whom he claims have terminal cancer and are completely physically incapacitated so they cannot care for each other.

He argues that serving the remainder of his sentence on home confinement will adequately protect the public and will not undercut respect for the law or suggest his offense was not serious. He notes that his offense of conviction was not violent and that he has a spotless prison disciplinary record, and the BOP has categorized him as a minimal security risk and has assigned him to a fenceless prison camp. He believes supervised release will allow him to further rehabilitate himself, and the Court would always have the remedy of revocation if he slips up.

Finally, Bell argues that he is serving an unusually long sentence ("ULS") because one of his codefendants, Trevon Taylor, who was guilty of almost the same conduct, was sentenced to a lower sentence.

In response, the Government first notes that Bell raises some of the same purported "extraordinary and compelling" reasons that the Court rejected in its prior orders. Indeed, The Court notes that Bell's motion appears to be a kind of extended briefing of his prior motion(s), where he raised the same health conditions of himself and his parents. In his motion, he also counters several arguments he says the Government makes, which must refer to its response to a

6

prior motion since it had not yet responded to the current one. This is an unacceptable attempt to make an end-run around the Court's prohibition on sur-reply briefs. To the extent Bell raises the same health issues he has raised before, including susceptibility to COVID-19, his health conditions, and the BOP's level of medical care, without any new developments, the Court adopts its prior ruling on the merits in its December 14, 2022, order (Doc. 930).

As for Bell's complaints of side effects of the COVID-19 vaccine, the Government points to the lack of documentation of adverse reactions and the time lag between his first vaccination in 2021 and his current reports of adverse effects. It also notes that, at the time of its response, Bell's facility reported no COVID-19 cases.

As for new arguments, the Government says Bell has not presented evidence that his health care, on an individual basis, is inadequate even though there are recognized problems with the system as a whole. To the extent he believes he has received inadequate medical care, his remedy is a civil lawsuit, not compassionate release.

As for Bell's family circumstances, the Government argues that Bell has not shown his parents are incapacitated or that he is the only available caregiver for his ill parents, especially since his brother and his family reside near their parents.

As for Bell's claims of a ULS, the Government notes that Bell did not exhaust his administrative remedies as to this argument because he did not include it in his request to the warden. Further, Bell has not yet served 10 years of his sentence, a requirement for the ULS to apply.

The Government further notes Bell remains a danger to society. It points to his lengthy criminal history and the large quantity of drugs and firearms involved in this case, Bell's second federal drug conviction. It notes he has only served a small fraction of his 235-month sentence and

7

was able to commit his crimes with many of the same health problems that plague him today.

    A.    <u>Exhaustion of Administrative Remedies</u>

Bell has failed to exhaust his administrative remedies as to his argument that he is serving a ULS.  Although he cites the ULS guideline in a footnote in his request to the warden (Doc. 1058 at 33), he only points to the guideline without any development of an argument whatsoever that would have given the warden a fair chance to evaluate Bell's request.  Accordingly, he cannot raise the ULS argument in this motion.  *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

Even if he could raise the argument based on this cursory reference, his sentence would not qualify under the ULS guideline because he has not yet served 10 years of his sentence.

    B.    <u>Medical Circumstances of the Defendant</u>

As noted above, Bell raised many of the same arguments in his first motion for compassionate release (Doc. 710)—his medical conditions, the danger from COVID-19, the level of medical care in the BOP—and the Court rejected them as extraordinary and compelling reasons for relief (Doc. 930).  Nothing has changed with respect to those factors.

To the extent Bell claims the vaccine has caused him unwanted adverse side-effects—chest pain, difficulty breathing, and exhaustion—his claims are speculative.  He provides no evidence to support that he has sought medical care for any such problems or that those problems bear any causal relationship to his COVID-19 vaccines.

    C.    <u>Family Circumstances</u>

Bell has not provided any evidence that his parents are incapacitated by their respective cancers or that Bell is the only available caregiver.  For another defendant, the Court might be willing to inquire further into their medical conditions and disabling side-effects of their treatments.  However, even if this were to amount to an extraordinary and compelling reason for compassionate

release, the Court would not grant Bell relief based on the § 3553(a) factors, as explained below.

    D.    § 3553(a) Factors

Even if there were extraordinary and compelling reasons for compassionate release, Bell is still a danger to the safety of others in the community.  The Court's analysis of the § 3553(a) factors at the sentencing hearing continues to apply now.  Bell was responsible for a massive amount of drugs, enough to place him well into the highest base offense level of 38, U.S.S.G. § 2D1.1(c)(1), and he possessed six firearms in connection with his offenses, U.S.S.G. § 2D1.1(b)(1).  Although he had few criminal history points, they came from a prior drug conviction before this very court, which sentenced him to serve 151 months in prison.  Apparently, that stint of incarceration was not enough to turn Bell into a law-abiding citizen.

Now, in his second, heftier, period of incarceration, he claims to be a changed man and no longer a danger to society.  But the Court notes that Bell's good prison record in the past did not mean he was rehabilitated.  During his earlier incarceration, he also had a positive record of participation in education programs, including RDAP, and prison employment, and he successfully completed supervised release, which the Court terminated early based on his compliance. Nevertheless, Bell went back to dealing drugs, and on a much larger scale.  In light of his history, the Court has no faith that his good prison conduct will translate into a law-abiding lifestyle outside the prison walls.  Bell's full sentence (reduced by any credits to which he is entitled) is still necessary to protect the public from his future crimes.

Further, Bell has only served a small fraction of his current sentence, and to release him now would not promote respect for the law and would undermine the gravity of his offenses.  The § 3553(a) factors do not weigh in favor of release from prison now.

E.  Home Confinement

Bell also asks the Court, as an alternative, to order him placed on home confinement during his sentence of incarceration. The Court does not have jurisdiction to entertain such a request. "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The BOP then has "plenary control" over placement of the inmate, subject only to statutory limits. *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that decision, 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him.

**III.  Conclusion**

For all of these reasons, the Court **DENIES** Bell's motion for a § 3582(c)(1)(A) sentence reduction (Doc. 1058).

**IT IS SO ORDERED.**
**DATED:  June 12, 2025**

               s/ J. Phil Gilbert
               **J. PHIL GILBERT**
               **DISTRICT JUDGE**